## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | **Chapter 7** |
| | ) | |
| **PEREGRINE FINANCIAL GROUP, INC. ,** | ) | |
| | ) | **Case No.  12 B 27488** |
| Debtor. | ) | |
| _____ | ) | |
| | ) | **Judge Carol A.  Doyle** |
| **SECURE LEVERAGE GROUP, INC., et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | **Adversary No. 12 A 01572** |
| | ) | |
| **IRA BODENSTEIN, not individually but** | ) | |
| **solely as the duly appointed Ch. 7 trustee of** | ) | |
| **the Estate of Peregrine Financial Group, Inc.,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The plaintiffs in this adversary proceeding were customers of Peregrine Financial Group, Inc. who traded in foreign currencies and metals through accounts with Peregrine.  They allege four counts, three of which seek a declaratory judgment that Peregrine does not hold the equitable interest in the funds in their accounts based on the account agreement with Peregrine or by operation of a resulting trust or a constructive trust.  The fourth count seeks a declaration that the contracts traded by the plaintiffs are **"**commodity contracts" under § 761(4) of the Bankruptcy Code and that the funds they deposited with Peregrine should be treated as "customer property" for purposes of the commodity broker liquidation provisions of Subchapter IV of Chapter 7 of the Bankruptcy Code.

The trustee of Peregrine, Ira Bodenstein, has moved to dismiss all four counts of the complaint.  He argues that the claims in the Counts I, II and III seeking declarations that Peregrine does not hold the equitable interest in the funds the plaintiffs deposited with Peregrine must be dismissed as a matter of law based on certain provisions of the account agreement and a disclosure statement regarding potential risks of trading in foreign currencies.  The trustee also moves to dismiss Count III seeking a constructive trust on the basis that no trust was imposed by a court pre-petition and bankruptcy courts should not impose post-petition constructive trusts. The trustee seeks dismissal of Count IV regarding the application of the commodity broker liquidation provisions of the Bankruptcy Code based on the same arguments he made with respect to Counts I through III regarding the account agreement and risk disclosure statement. For the reasons discussed below, none of the trustee's arguments is persuasive except with respect to the constructive trust sought in Count III.  The court will grant the motion with respect to Count III but will deny the motion regarding Counts I, II and IV.

## I.    Background

This adversary proceeding  arises from the chapter 7 liquidation of Peregrine, a registered "Futures Commission Merchant" ("FCM") and a registered "Forex Dealer Member" of the National Futures Association ("NFA").  Before Peregrine filed for bankruptcy, the plaintiffs opened accounts with Peregrine for the purpose of trading retail foreign currency contracts ("forex") and spot metal contracts ("metals").

According to the complaint, each plaintiff executed a standard form customer agreement (the "Agreement") with Peregrine.  The Agreement was a master agreement covering all types of

2

trading through Peregrine, not just forex and metals, including cash commodities, security

futures products, commodities futures contracts, commodity swaps, currency swap transactions,

and various options and derivatives.  Some types of trading covered by the Agreement took place

on regulated exchanges while some types, including forex transactions, did not.  The Agreement

states that the customer was given a copy of a Currency Forex Risk Disclosure Statement

("Forex Disclosure") that Peregrine was required by law to provide to each forex customer.  The

Forex Disclosure identified various risks taken by parties trading in foreign currencies, including

that the trades do not take place on regulated exchanges.  The Agreement allowed customers to

engage in all the types of trading specified in the contract using money they deposited with

Peregrine and margin loans provided by Peregrine.  Peregrine maintained an online trading

system that allowed customers to place trade orders electronically.  The plaintiffs allege that they

deposited funds into specific accounts designated by Peregrine for purposes of forex trading.

 Peregrine filed a bankruptcy petition in July 2012, after potential fraud and theft of

customer funds was disclosed.  In September 2012, the trustee filed a motion seeking authority to

begin distributions of "customer property" pursuant to § 766(h) of the Bankruptcy Code, 11

U.S.C. § 766(h), to Peregrine's customers who traded commodities contracts.  The trustee

excluded Peregrine's forex and metals customers, including the plaintiffs, from the customers

who would receive a partial distribution of funds at that time.  The plaintiffs objected to the

trustee's motion on the basis that they should be included in the interim distribution.  The court

overruled their objections and granted the motion.  The plaintiffs then filed a motion seeking to

compel the trustee to abandon the funds which they deposited with Peregrine because they are

not property of the bankruptcy estate.  In the alternative, the plaintiffs requested that the trustee

3

be required to treat funds in their accounts as "customer property" like the funds in accounts of

commodities customers.  In effect, the plaintiffs were saying that they were entitled to the same

kind of distributions under § 766(h) as the trustee was making to other customers of Peregrine.

The court suggested that it might be more appropriate to address these issues, particularly those

seeking declarations of resulting and constructive trusts, in an adversary proceeding.  The

plaintiffs therefore withdrew their motion and filed the complaint in this adversary proceeding.

      Count I seeks a declaratory judgment that the funds the plaintiffs deposited with

Peregrine are not property of the estate under § 541(d) of the Bankruptcy Code because

Peregrine does not hold the equitable interest in the funds under the Agreement.  Count II seeks a

declaratory judgment that the circumstances surrounding the plaintiffs' deposit of funds with

Peregrine created a pre-petition resulting trust over the funds that arose when the deposits were

made.  The plaintiffs contend that these funds held in trust are not property of the estate under §

541(d).  Count III seeks the imposition of a constructive trust over the funds in the plaintiffs'

accounts and a declaration that the funds are not property of the estate under § 541(d).  Plaintiffs

allege that Peregrine owed a fiduciary duty to the plaintiffs and that, to the extent Peregrine

failed to hold the plaintiffs' funds in a separate accounts or otherwise committed fraud or

misrepresentation, the court should impose a constructive trust on the funds.  Count IV seeks a

declaratory judgment that the forex and metals contracts the plaintiffs traded fall within the

definition of "commodity contract" in § 761(4) of the Bankruptcy Code, so the funds in the

plaintiffs' accounts should be treated the same as the funds in accounts of commodities

customers.

The trustee moved to dismiss all four counts, arguing primarily that the Agreement and the Forex Disclosure preclude the relief sought. Each count is addressed below.

## II.    Standard for Motion to Dismiss

The trustee has moved to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which applies to adversary proceedings through Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. In ruling on a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000). While a complaint need not contain "detailed allegations," the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955)).

When a party moves to dismiss a complaint for failure to state a claim based on contract interpretation, courts examine whether or not the clear, unambiguous language of a contract contradicts the plaintiffs' allegations. *See, e.g.*, *Nathan v. Morgan Stanley Renewable Dev. Fund, LLC*, No. 11 C 2231, 2012 WL 1886440, at *12 (N.D. Ill. May 22, 2012); *Facility Wizard Software, Inc. v. Se. Technical Servs., LLC*, 647 F. Supp. 2d 938, 942, 946-47 (N.D. Ill. 2009). When the clear terms of a contract conflict with the plaintiffs' allegations in their complaint, the contract controls. *Appert v. Morgan Stanley Dean Witter, Inc.*, No. 08-CV-7130, 2010 WL

5186765, at *1 (N.D. Ill. Dec. 9, 2010) (citing *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999)).   When the language of the contract is ambiguous or unclear with respect to the plaintiff's claim, however, the court will not dismiss at this stage of the proceedings.   *See Nathan v. Morgan Stanley*, 2012 WL 1886440, at *12 (citing *Quake Constr., Inc. v. Am. Airlines, Inc.*, 141 Ill. 2d 281, 565 N.E.2d 990, 994 (Ill. 1990)) (noting that when a contract is unclear, the intent of the parties is a question of fact which cannot be determined on a motion to dismiss).

### III.     Count I - Declaratory Relief for Return of Property Pursuant to Section 541(d)

Plaintiffs allege in Count I that Peregrine has no equitable interest in the funds the plaintiffs deposited with Peregrine so the funds are excluded from property of the bankruptcy estate under § 541(d) of the Bankruptcy Code, 11 U.S.C. § 541(d).   They rely on various provisions of the Agreement, as well as some written and oral representations allegedly made by the president of Peregrine and some introducing brokers who solicited their business for Peregrine.   The plaintiffs also allege that the funds they deposited with Peregrine can be directly traced to the accounts in which they are still held or that they can show an adequate nexus to funds now held by Peregrine for tracing purposes**.**   The plaintiffs contend, therefore, that the funds are not property of the bankruptcy estate and must be returned to the plaintiffs.

Section 541(d) provides that if a debtor held only legal title but not an equitable interest in property when the bankruptcy petition was filed, the bankruptcy estate holds only legal title to the property.  It states:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, . . . becomes property of the estate under subsection [541](a)(1) or (2) . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).

The trustee argues that the plaintiffs fail to state a claim in Count I for three reasons:  (1) the Agreement expressly incorporates the Forex Disclosure, which gave Peregrine the right to commingle customer funds and use them for any purpose; (2) provisions in the Agreement demonstrate that the plaintiffs do not hold the equitable interest in the funds; and (3) the Agreement contains an "integration and non-reliance provision" that precludes reliance on any oral or written representations not made in the Agreement.  Each argument is addressed below.

### A.    The Forex Disclosure

The trustee relies heavily on language in the Forex Disclosure to support his argument that Peregrine had unfettered discretion to use the money transferred by the plaintiffs to Peregrine for purposes of forex trading and that Peregrine owed no obligation to hold the money in trust for the plaintiffs.  In effect, the trustee contends that Peregrine held both legal and equitable title to the funds for purposes of § 541(d).  He argues that the Forex Disclosure was expressly incorporated by reference into the Agreement, so its provisions are binding on the plaintiffs.  His arguments are not persuasive for two reasons.  First, the Agreement refers to the Forex Disclosure but does not incorporate it by reference.  Second, the Forex Disclosure is simply a disclosure form that warned forex traders of potential risks of trading.  It does not create rights and obligations in the parties to the Agreement.

### 1.    Incorporation of the Forex Disclosure by Reference

The Forex Disclosure is a two-page document written by regulators to warn forex customers of the possible risks of forex trading. Peregrine was required by law to provide every "retail forex customer with a separate written disclosure statement containing only the language set forth in [the Forex Disclosure]." 17 C.F.R. § 5.5 (2010). The Forex Disclosure is given to all forex customers of all registered FCMs, not just Peregrine's customers. It contains various disclosures, including that: (1) forex trading is not conducted on a regulated market or exchange; (2) the trades are conducted with the customer's dealer (i.e., Peregrine); (3) the customer's deposits with the dealer have no regulatory protections like those provided to customers trading on a contract market regulated by the CFTC; (4) the dealer may commingle the customer's funds with its operating funds and use them for other purposes; and (5) the customer's claims in any future bankruptcy may be treated as unsecured claims.

The trustee contends that the Forex Disclosure was incorporated by reference into the contract and that all of the warnings in it should be treated as contract provisions binding on the plaintiffs. Under Illinois law, "a document is incorporated by reference into the parties' contract only if the parties intended its incorporation." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002). The incorporation must be clear and specific. *Id.* The party seeking to enforce the terms of the contract must show such an intention. *Id.* Mere reference to another document is not sufficient to incorporate its terms into the contract. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 666 (7th Cir. 2002).

The Agreement refers to the Forex Disclosure in only one provision - Section 20. It states: "For additional risk factors associated with Currency Forex, Customer should refer to the

8

Currency Forex Risk Disclosure Statement, a copy of which has been provided to Customer."

This language does not express any intent to incorporate the terms of the Forex Disclosure as

binding terms of the Agreement.  It merely directs forex customers to read the Forex Disclosure

for further potential risks associated with forex trading.  It does not show the "clear and specific"

intent required to incorporate the Forex Disclosure into the Agreement.  The statements in the

Forex Disclosure are not contract provisions that gave Peregrine the right to use customer funds

as it chose.

### 2.        Terms of the Forex Disclosure

The language of the Forex Disclosure also supports the conclusion that it was not

intended to be part of the contractual obligations between a customer and a dealer.  It contains

only general warnings about the possible risks of forex trading and specifically states that the

account agreement controls all of the customer's rights associated with forex trading.

The paragraph of the Forex Disclosure regarding customer funds provides as follows:

(3) YOUR DEPOSITS WITH THE DEALER HAVE NO REGULATORY
PROTECTIONS.

*All of your rights* associated with your retail forex trading, including the manner and
denomination of any payments made to you, *are governed by the contract terms
established in your account agreement* with the futures commission merchant or retail
foreign exchange dealer.  Funds deposited by you with a futures commission merchant or
retail foreign exchange dealer for trading off-exchange foreign currency transactions are
not subject to the customer funds protections provided to customers trading on a contract
market that is designated by the Commodity Futures Trading Commission.  Your dealer
*may commingle your funds with its own operating funds or use them for other purposes.*
In the event your dealer becomes bankrupt, any funds the dealer is holding for you in
addition to any amounts owed to you resulting from trading, whether or not any assets are
maintained in separate deposit accounts by the dealer, *may be treated as an unsecured
creditor's claim.* (emphasis added).

The first sentence of this paragraph expressly states that all of a customer's rights are governed by the contract with the dealer.  This statement makes it clear that the Forex Disclosure is intended only as a general warning to forex customers, not a document that creates specific rights regarding specific customer accounts.

The trustee ignores this sentence and relies on the language following it to support his contention that the Forex Disclosure effectively granted to Peregrine both the legal and equitable title to the money deposited by forex customers.  He contends that it grants Peregrine the right to commingle customer funds with Peregrine's operating funds and to treat any claim to the customer funds in a bankruptcy as an unsecured claim.  These sentences state only that the dealer "may" commingle the customer's funds and the customer's claim "may" be treated as an unsecured claim, not that they will be so treated under the customer agreement.  When read in context with the first sentence providing that the account agreement governs all the rights of the parties, this language cannot reasonably be read to confer a specific contractual right in Peregrine that is not separately created in the Agreement.  The terms of this Forex Disclosure warn forex customers of the greatest risks they could face  - in effect a worst case scenario - if the dealer imposed such terms in the customer agreement.  To interpret it otherwise would render meaningless the first sentence that "*all of your rights* associated with your retailing forex trading . . . are governed by the *contract terms established in your account agreement* . . . ." (emphasis added).  Thus, neither the terms of the Agreement nor the statements in the Forex Disclosure support the trustee's argument that the Forex Disclosure granted to Peregrine full ownership of funds deposited by customers.  The Forex Disclosure therefore provides no basis for dismissing Count I of the complaint.

### B.      The Agreement - Treatment of Customer Funds

The trustee also argues that the terms of the Agreement itself preclude the relief sought by plaintiffs in Count I.  The trustee refers only to two provisions of the Agreement that could potentially support his argument, neither of which establishes that the plaintiffs' claims in Count I fail as a matter of law.

### 1.      Paragraph 8

First, the trustee quotes a sentence in Paragraph 8(f) of the Agreement that he apparently contends gives Peregrine the unlimited right to pledge, repledge, hypothecate, sell or purchase the property of the customer.  Paragraph 8 provides:

8. COLLATERAL

All funds, securities, commodities, commodity futures contracts, commodity option contracts, and *other property of the Customer* which PFGBEST or its affiliates may at any time be *carrying for Customer* . . . , or which may at any time be in PFGBEST's possession, control, or *carried* on PFGBEST's books for any purpose, including safekeeping, are to be *held by PFGBEST as security and subject to a general lien* and right of setoff against liabilities of Customer to PFGBEST whether or not PFGBEST has made advances in connection with such securities, commodities or other property, and irrespective of the number of accounts Customer may have with PFGBEST.  At any time, PFGBEST may in its discretion, with or without notice to Customer, apply and/or transfer any or all of the *funds or other property of Customer* between any of Customer's Accounts.  Additionally, Customer hereby grants to PFGBEST the right to pledge, repledge, hypothecate, sell or purchase, invest or loan, either separately or with *the property of other Customers, to itself as broker* or to others, as securities or *other property of Customer* held by PFGBEST as margin or security.  The value of any such *collateral* shall be determined by PFGBEST in its sole discretion . . . .  PFGBEST shall at no time be required to deliver to Customer the identical property delivered to or purchased by PFGBEST for any account of Customer.  The Customer agrees to maintain at all times with PFGBEST *collateral* in such form and in such amount as PFGBEST may from time to time request orally or in writing.  In all cases, *collateral* shall be deemed received by PFGBEST when such *collateral* is actually received by PFGBEST.  The rights of PFGBEST are subject to the applicable requirements for the segregation of Customer funds and property under the Commodity Exchange Act, as amended ("The Act"). (emphasis added).

11

The trustee points to the strongest sentence in his favor in Paragraph 8 - the one referring to a right to pledge, hypothecate, sell , purchase, invest, or loan that presumably applies to the property of the customer.  This sentence, however, does not appear to give Peregrine unfettered rights in the customer property.  Though it would be difficult to diagram this ungainly sentence, it appears to limit the right of Peregrine to pledge, hypothecate, sell, or loan customer property to situations in which the property is required as "margin or security."

The trustee also ignores a key phrase in this sentence:  "property of Customer."  This phrase is used four times in Paragraph 8 and repeatedly throughout the Agreement.  One plausible interpretation of "property of customer" is literal - it means "property belonging to the customer." Under this interpretation, customers retained the equitable interest in all money and other property transferred by a customer to Peregrine for purposes of trading.  Consistent with this interpretation, the sentence relied on by the trustee says that Peregrine can "pledge . . . sell or purchase, invest or loan . . . *to itself as broker* or to others" the property of a customer, either alone or together with property of other customers.  If the customer had given both legal title and the equitable interest in the funds to Peregrine, there would be no need to loan or pledge Peregrine's own property to itself as broker.  The trustee never explains how a sentence allowing Peregrine to pledge, sell or loan property of a customer "to itself as broker" establishes that Peregrine had both legal and equitable title to the customer property in the first place.

Thus, even standing alone, the one sentence in Paragraph 8 on which the trustee relies does not demonstrate that Peregrine held both legal and equitable title to the property or the right to do what it chose with customer funds.  When this sentence is considered in the context of the other language in Paragraph 8, the trustee's argument is even less persuasive.

12

For example, Paragraph 8 is entitled "Collateral" and repeatedly refers to customer property as collateral.  It expressly grants Peregrine a lien in the customer property.  It states that all customer property in the possession of Peregrine is "held" by Peregrine "as security and subject to a general lien and right of setoff" against the liabilities of the customer.  If Peregrine held legal and equitable title to the property, there would be no need to hold the property as "security" or "collateral" and grant Peregrine a lien in its own property.  The first sentence of Paragraph 8 also states that Peregrine will be "carrying" all funds and other customer property for the customer.  It is not clear what "carrying" means in this context, but it is plausible to interpret it to mean "holding" property for the customer, which is consistent with the plaintiffs' interpretation of "property of customer" and "collateral."  All of this language in Paragraph 8 supports the plaintiffs' contention that the Agreement does not give Peregrine the equitable interest in customer funds.  The paragraph does not contain clear language demonstrating that the trustee should prevail on Count I as a matter of law.

### 2.    Paragraph 7

The trustee also appears to rely on Paragraph 7 of the Agreement to support his argument that the terms of the Agreement demonstrate that the plaintiffs do not hold the equitable interest in their accounts.  He argues that this provision clearly establishes that Peregrine was not acting in a fiduciary capacity with respect to forex transactions.

Paragraph 7 is entitled "Currency Forex Trading" and contains most of the provisions in the Agreement dealing with forex trading.  It states that forex transactions are traded on the "interbank" system and not on regulated exchanges.  It explains that the interbank system consists

of counterparties that exchange currency positions with each other, and that they may be, but need not be, a bank.  Paragraph 7(a) provides as follows:

> [Peregrine] shall act as principal and is the counterparty in each Currency Forex contract or transaction with Customer.  Customer acknowledges, understands and agrees that [Peregrine] is *not acting as a broker, intermediary, agent, advisor or in any fiduciary capacity to Customer in Currency Forex transactions*. (emphasis added).

Although the trustee relies on this paragraph primarily with respect to Counts II and III regarding trusts, he also mentions it with respect to Count I, presumably to contend that if Peregrine was holding funds to which the customers had equitable title, Peregrine would owe a fiduciary duty to the customers with respect to those funds.  The trustee asserts that this sentence in Paragraph 7(a) precludes any possibility that Peregrine owed a fiduciary duty to forex customers like the plaintiffs.

This provision is not as broad as the trustee suggests.  It states that Peregrine is not acting as a fiduciary with respect to forex trades, presumably because Peregrine will be acting as the principal - meaning the party against whom customers trade - on forex transactions.  This sentence makes it clear that when Peregrine is the counterparty to a customer who is trading in forex, it owes the customer no fiduciary duty with respect to that trade.  In other words, Peregrine may try to make a profit for itself in forex transactions and will not owe a duty to assist the customer in making a profit for the customer.  Paragraph 7(a) specifically limits the disclaimer of a fiduciary duty to *"Currency Forex transactions*."  (emphasis added).  It does not exclude the possibility that Peregrine could owe customers a fiduciary duty under the Agreement with respect to other aspects of the relationship, such as holding customer property.  The Agreement does not contain any general disclaimer of a fiduciary duty when dealing with customers in other contexts.

14

This provision in Paragraph 7(a), which is limited by its own terms to forex transactions, is not sufficient to establish a matter of law that the plaintiffs do not hold the equitable interest in the funds in their accounts or that Peregrine did not owe them a fiduciary duty with respect to holding customer property.

### C.    Oral and Written Representations Made Outside of the Agreement

Finally, the Trustee argues that the plaintiffs' allegations regarding various oral and written representations cannot provide a basis for the claim in Count I or any other count because the Agreement contains an "integration and non-reliance" clause.  The plaintiffs allege in the complaint that the president of Peregrine and some introducing brokers made representations regarding forex trading including the following:

-Peregrine is a pass-through broker.

-Customer funds will reside separately with the bank market makers.

-Peregrine will merely get a fee each time its system passes customer orders to the banks, always at the customer's direction.

-The Direct Market Access system provided for forex trading allows the customer to deal directly on the interbank market with bank market makers at the best prices, and the customer's money is safe unless the bank where it is kept goes out of business.

-The banks Peregrine uses for forex customer business are large and creditworthy, such as JP Morgan Chase and Bank of Scotland.

-Peregrine can touch the customer's collateral only if the customer loses money trading and it is needed to cover the customer's margin loan.

-The Direct Market Access structure makes Peregrine different from other forex brokers, who have a dealing desk and take the other side of each trade, making money when the customer loses money.

15

The trustee argues that the plaintiffs cannot demonstrate that they reasonably relied on any such representations because the contract contains an integration and non-reliance clause.  He asserts that, under Illinois law, a party may not introduce parol evidence when a contract contains an integration clause that is "facially unambiguous."  The trustee's argument is based on a sentence in Paragraph 20 of the Agreement that provides:

> "Further Customer acknowledges that Customer has relied only on the terms and representations contained in this Agreement in formulating Customer's decision to open an account with PFGBEST."

The trustee contends that this sentence is an "integration and non-reliance provision" that precludes reliance on any representations beyond those in the contract and the Forex Disclosure.

There are at least three flaws in this argument.  First, as discussed above, the plaintiffs have alleged a plausible claim that Peregrine does not hold the equitable interest in the funds in their accounts based on the Agreement without the oral representations alleged in the complaint. Thus, even if the court agreed with the trustee's interpretation of Paragraph 20, Count I would not be dismissed.

Second, this provision in Paragraph 20 is not a traditional integration clause.  Integration clauses generally provide that the contract represents the entire agreement of the parties and that nothing else can be considered in interpreting the contract.  *See, e.g., Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 706 N.E.2d 882 (Ill. 1999) (enforcing an integration clause providing that the "[c]ontract represents the entire and integrated agreement between the parties hereto and supersedes all prior negotiations, representations, or agreement, either written or oral.").  The sentence relied on by the trustee states that the customer has relied only on the representations in the Agreement in opening the account with Peregrine.  The clause is more

16

accurately described as a non-reliance clause, disclaiming reliance for the purposes of fraud or

fraudulent inducement claims, rather than a merger or integration clause.  *See Extra*

*Equipamentos E Exportaçào Ltda. v. Case Corp.*, 541 F.3d 719, 724-25 (7th Cir. 2008).  It does

not express an unequivocal intent that the agreement be fully integrated and does not explicitly

foreclose the use of parol evidence to interpret ambiguous terms of the contract.  *See PharMerica*

*Chicago, Inc. v. Meisels*, 772 F. Supp. 2d 938, 951 (N.D. Ill. 2011) (quoting *W.W. Vincent & Co.*

*v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 966 (Ill. App. Ct. 2004)) ("[T]he parol evidence

rule generally precludes evidence of understandings not reflected in the contract, reached before

or at the time of its execution, which would *vary or modify its terms*.") (emphasis added) (internal

quotation marks omitted)*; Air Safety*, 185 Ill. 2d 457, 706 N.E.2d at 884 (stating that parol

evidence may be admitted to aid the trier of fact in resolving ambiguity in a contract.).

Even when a contract contains a clear integration clause, parole evidence may be admitted

to explain ambiguous terms.  *See, e.g., Music Dealers, LLC v. Sierra Bravo Corp.*, No. 1:12-cv-

00712, 2012 WL 4017950 (N.D. Ill Sept. 10, 2012); *First Am. Commercial Bancorp, Inc. v.*

*Interior Architects, Inc*., No. 03 CV 00638, 2004 WL 2011398 (N.D. Ill. 2004).  Illinois law also

allows the introduction of oral and written representations which do not vary or alter the terms of

a contract for the purposes of showing a collateral agreement that does not contradict the written

agreement.  *See Hartbarger v. SCA Services, Inc.*, 200 Ill. App. 3d 1000, 558 N.E.2d 596, 601-03

(Ill. App. Ct. 1990).  Thus, the non-reliance clause in the Agreement does not exclude the

possibility that parol evidence can be admitted to explain the terms of the Agreement.

Finally,  two of the principal cases relied on by the trustee involve claims for fraud in the

inducement of a contract.  They address whether the plaintiff can reasonably rely on oral

17

representations when the contract states that they relied only on the representations made in the

contract itself. *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574-75 (7th

Cir. 2001); *Adler v. William Blair & Co.*, 271 Ill App. 3d 117, 648 N.E.2d 226, 232-233 (Ill. App.

Ct. 1995).  They shed no light on whether the plaintiffs have stated a claim in Count I, which

alleges a claim based on the terms of the Agreement and surrounding circumstances, not a claim

for fraud in the inducement.

The plaintiffs have stated a plausible claim in Count I**.**  There is no need to resolve at this

stage of the proceedings the extent to which evidence regarding the representations alleged in the

complaint will be admissible at trial.  The motion to dismiss Count I will be denied.


## IV.      Count II - Resulting Trust

In Count II of the Complaint, the plaintiffs seek a declaratory judgment that a resulting

trust was created when they transferred money to Peregrine based on the terms of the Agreement

and the circumstances surrounding their transfers.  They contend that Peregrine took only legal

title to the funds while the plaintiffs retained equitable title, and, therefore, the funds are not

property of the bankruptcy estate under § 541(d) of the Bankruptcy Code.  They also allege that

the money they deposited can be traced to specific Peregrine accounts at specific banks or that

they can otherwise show a specific nexus to funds held today to require the return of the funds.

The Trustee argues that the resulting trust claim should be dismissed for the same reasons

that it argued Count I should be dismissed:  the non-reliance provision of the Agreement

precludes any claim that the plaintiffs relied on representations outside the contract, the

Agreement provides that Peregrine was not acting in a fiduciary capacity regarding forex trading,

18

and the Agreement and Forex Disclosure provisions gave Peregrine the right to commingle and
use all funds deposited by forex customers as it chose. The court rejects these arguments
regarding the plaintiff's resulting trust claim in Count II for the same reasons they were rejected
with respect to Count I.

  Under Illinois law, resulting trusts are "intent enforcing devices that arise by operation of
law and the presumed intent of the parties distilled from their conduct." *Davenport* v. *S.I. Secs.
(In re Davenport)*, 268 B.R. 159, 162 (Bankr. N.D. Ill. 2001) (citing *Fender v. Yagemann*, 29 Ill.
2d 205, 193 N.E.2d 794, 796 (Ill. 1963); *Judgment Servs. Corp. v. Sullivan*, 321 Ill. App. 3d. 151,
746 N.E.2d 827, 831 (Ill. App. Ct. 2001). "A resulting trust arises by operation of law where one
person furnishes the consideration for property and the title is taken in another." *Treschak v.
Yorkville Nat'l Bank*, 237 Ill. App. 3d 855, 604 N.E.2d 1081, 1083 (Ill. App. Ct. 1992). "The
intent of the parties at the time of conveyance is controlling. The intent may be shown by the
circumstances surrounding the transaction and by parol evidence." *Id.* A resulting trust may also
arise where an express trust fails. *See In re Porco, Inc.*, 447 B.R. 590, 596 (Bankr. S.D. Ill.
2011).

  The plaintiffs have alleged a plausible claim for a resulting trust based on the terms of the
Agreement, even without the oral representations alleged in the complaint. The court will not
decide at this stage of the proceedings the extent to which parol evidence is admissible with
respect to Count II. *See Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 948 N.E.2d 132,
153-56 (Ill. App. Ct. 2011). The trustee's motion to dismiss Count II will be denied.

### V.    Count III - Constructive Trust

In Count III, the plaintiffs ask the court to impose a constructive trust on funds in their forex accounts.   They allege that Peregrine owed them a fiduciary duty regarding the funds in their accounts for various reasons.   They also allege that "to the extent" various written and oral statements of the debtor "were untrue, misleading, or ambiguous," Peregrine committed fraud or misrepresentation.   They contend that Peregrine and its creditors would be unjustly enriched if the funds in the plaintiffs' accounts were used to pay Peregrine's creditors.   They seek imposition of a constructive trust on these funds and a declaration that the money is not property of the estate under § 541(d).

The trustee moved to dismiss this claim on the basis that the imposition of a constructive trust is a remedy under Illinois law that does not create a property right cognizable under § 541(d) until a court imposes this remedy.   He contends that no court imposed a constructive trust in favor of the plaintiffs before Peregrine filed its bankruptcy petition so the plaintiffs are mere unsecured creditors.   The trustee also argues that bankruptcy courts should not impose constructive trusts post-petition because they contravene the distribution scheme embodied in the Bankruptcy Code.   The court agrees with the trustee on both points.

### A.    Constructive Trusts Under Illinois Law

As noted above, § 541(d) of the Bankruptcy Code excludes from the bankruptcy estate assets that the debtor held on the petition date in trust for another.   Whether assets are held in trust by the debtor is determined by state law.   *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914 (1979) (stating that property interests are created and defined by state law unless a federal

interest requires a different result).  Section 541(d) describes the classic express trust situation in which a trustee holds bare legal title to property for the benefit of another who holds equitable title to the trust property.  *See Berger, Shapiro & Davis, P.A. v. Haeling (In re Foos)*, 183 B.R. 149, 156 (Bankr. N.D. Ill. 1995).  Under Illinois law, express trusts are based on the settlor's intent and an agreement between the settlor and the trustee.  They do not require judicial action for their existence and they fall squarely within the exclusion from the definition of property of the estate in § 541(d).  *Foos*, 183 B.R. at 157-58.

Constructive trusts, by contrast, are imposed by Illinois courts as an equitable remedy to prevent unjust enrichment.  This remedy is available primarily in cases of fraud or breach of fiduciary duty.  The trust is created only after a plaintiff has prevailed in court and the court imposes a trust as a remedy.  *Suttles v. Vogel*, 126 Ill. 2d. 186, 533 N.E.2d 901, 904 (Ill. 1988).  As the Illinois Supreme Court held in *Suttles,* "[a] constructive trust is created when a court declares the party in possession of wrongfully acquired property as the constructive trustee of that property." (*citing Charles Hester Enters., Inc. v. Ill. Founders Ins. Co.,* 114 Ill.2d 278, 293, 499 N.E.2d 1319 (Ill. 1986)).  *See also Fredrickson v. Blumenthal*, 271 Ill. App. 3d 738, 648 N.E.2d 1060, 1061 (Ill. App. Ct. 1995); *Eldridge v. Eldridge*, 246 Ill. App. 3d 883, 617 N.E.2d 57, 62 (Ill. App. Ct. 1993); *Pottinger v. Pottinger*, 238 Ill. App. 2d 908, 605 N.E.2d 1130, 1137-39 (Ill. App. Ct. 1992).  Thus, under Illinois law, a party asserting a claim for fraud or breach of fiduciary duty has no property right in funds wrongly held by another until the party has obtained a court order imposing a constructive trust as a remedy.  *Suttles*, 126 Ill.2d at 193, 533 N.E.2d at 904.  *See also Foos*, 183 B.R. at 158-60.  In this case, no court imposed a constructive trust over any funds held by Peregrine before it filed for bankruptcy.  Under Illinois law, therefore, the plaintiffs

had no equitable interest on the petition date based on a constructive trust that would exclude

funds in their accounts from property of the estate under § 541(d).

The plaintiffs argue that Illinois law does create a property interest that falls within the

exception in § 541(d).  They contend that Illinois courts have held that the trust created in favor of

victims of fraud or breach of fiduciary duty arises at the time the wrong is committed, not later

when a court imposes a constructive trust.  They rely primarily on two bankruptcy court decisions

concluding that a constructive trust arises under Illinois law at the time of the wrongdoing,

*Claybrook v. Consolidated Foods, Inc. (In re Bake-Line Group, LLC)*, 359 B.R. 566 (Bankr. D.

Del. 2007) and *In re DVI, Inc.*, 306 B.R. 496 (Bankr. D. Del. 2004).  Both courts relied heavily on

a district court decision in which the court stated that "[t]he law in Illinois is clear that a

constructive trust arises at the time of the wrong."  *Stansbury v. United States*, 543 F. Supp. 154,

157 (N.D. Ill. 1982), *aff'd*, 735 F.2d 1367 (7th Cir. 1984).  The *Stansbury* court cited two cases

for this proposition, neither of which is  "clear" and both of which were decided 40 years before

*Suttles*.[1]

---

[1]In  *Anderson v. Lybeck*, the first case cited in *Stansbury*, the court stated that a
constructive trust "arises only when that fraud is proved or when advantage is taken of a
fiduciary relationship . . ." 15 Ill. 2d 227, 154 N.E.2d 259, 262 (Ill. 1958).  This suggests that a
constructive trust may arise at different times depending on whether the underlying claim is
fraud or breach of fiduciary duty.  At a minimum, this shows that the statement in *Stansbury* that
Illinois law is clear that a constructive trust arises at the time of the wrong was incorrect with
respect to fraud claims.

In *Cohon v. Oscar L. Paris Company*, 17 Ill. App. 2d 21, 149 N.E.2d 472 (Ill. App. Ct.
1958), the second case cited in *Stansbury*, the court made no definitive statement on the issue.  In
imposing a constructive trust, the court stated:

Where a person holding title to property is subject to an equitable duty to convey it to
another on the ground that he would be unjustly enriched if he were permitted to retain it,
a constructive trust arises. . . .  'When a property has been acquired in such circumstances

22

In *Suttles*, the Illinois Supreme Court resolved any doubt that may have existed regarding when a constructive trust arises under Illinois law.  The court unequivocally pronounced that a constructive trust is an equitable remedy and that the trust is created "when a court declares" the party in possession of wrongfully acquired property as the constructive trustee of the property. Illinois courts have consistently so held since *Suttles* was decided.  *See, e.g.*, *Smithberg v. Illinois Mun. Ret. Fund*, 192 Ill.2d 291, 299, 735 N.E.2d 560, 566 (2000); *Fredrickson*,271 Ill. App. 3d 738, 648 N.E.2d at 1061; *Eldridge*,246 Ill. App. 3d 883, 617 N.E.2d at 62; *Pottinger*, 238 Ill. App. 2d 908, 605 N.E.2d at 1137-39.  Federal courts interpreting state law are bound by the rulings of the highest court of the state.  *Reiser v. Residential Funding Corp.*, 380 F.3d 1027 (7th Cir. 2005).   Under *Suttles*, *Smithberg*, and all subsequent Illinois authority, a constructive trust arises only when a court creates it.   The plaintiffs in this case had no property interest created by a constructive trust as of the petition date for purposes of § 541(d) based on their claims of breach of fiduciary duty and fraud in Count III.

---

that the holder of he legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. * * * A court of equity in decreeing a constructive trust is bound by no unyielding formula.  The equity of the transaction must shape the measure of relief.'

*Id.* at 476 (citing Restatement of Restitution § 160) (quoting *Beatty v. Guggenheim Exploration co.*, 225 N.Y. 380, 122 N.E. 378 (N.Y. 1919)) (citation omitted).

This passage conveys little about when the trust actually arises.  In acknowledging the breath of power of that a court of equity possesses to correct the wrong, the decision supports the view that the trust itself arises only when the court "decrees" it.

23

### B.     Constructive Trusts In Conflict With Bankruptcy Code

Plaintiffs also contend that this court can impose a constructive trust over estate assets post-petition in this adversary proceeding.  The court disagrees.  The plaintiffs are not entitled to a constructive trust as a remedy for their claims in Count III because imposing a constructive trust post-petition in bankruptcy would thwart the distribution scheme of the Bankruptcy Code.

As the Sixth Circuit has aptly noted, "Nowhere in the Bankruptcy Code does it say 'property held by the debtor subject to a constructive trust is excluded from the debtor's estate.'" *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1448 (6th Cir. 1994). The *Omegas* court recognized that a constructive trust is not really a trust at all.  It is a legal fiction, a remedy imposed to require a defendant to relinquish property that represents an unjust enrichment.  As a remedy, the trust does not exist until a plaintiff obtains a judicial decision "impressing" defendant's assets with a constructive trust.  A party claiming entitlement to a constructive trust who does not have a pre-petition judicial decree creating one does not have an equitable interest in the debtor's property for purposes of § 541(d).  *Id.* at 1451.

The *Omegas* court also noted that while courts generally impose constructive trusts according to the "equities" of a particular case, the "equities of bankruptcy are not the equities of the common law." *Id.* at 1452.  Indeed,  "[c]onstructive trusts are anathema to the equities of bankruptcy." *Id.*  Bankruptcy courts are bound to apply any equitable powers they possess within the confines of the Bankruptcy Code, not to contravene it.  *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206-07, 108 S.Ct. 963 (1988).  The Bankruptcy Code requires the ratable distribution of property to all creditors.  *See* 11 U.S.C. § 507; *Shapiro v. Saybrook Mfg. Co. (In re Saybrook Mfg Co.)*, 963 F.2d 1490, 1495-96 (11th Cir. 1992); *Foos*, 183 B.R. at 161.

24

Bankruptcy courts may not defeat the distribution scheme in the Code by invoking equitable

considerations.

Creditors with claims for fraud or breach of fiduciary duty are given no special priority in

the distribution of property of the estate under the Bankruptcy Code. Instead, these creditors may

seek a finding that the debt is nondischargeable under various provisions in § 523(a), 11 U.S.C. §

523(a). A finding of nondischargeability allows the claimant to attempt to collect the debt from

assets that are not property of the estate. It gives them no higher claim to property of the estate

than any other unsecured creditor. To impose the remedy of a constructive trust for the plaintiffs'

claims of fraud or breach of fiduciary duty would effectively grant these creditors a superpriority

over all other creditors and even the trustee. *See Foos*, 183 B.R. at 160. For these reasons, many

bankruptcy courts have refused to impose post-petition constructive trusts. *See Stevens v.

Century Furniture Co. (In re CL Furniture Galleries, Inc.)*, No. 95 C 50103, 1995 WL 756853, at

*8 (N.D. Ill. Dec. 20, 1995); *Media House Prods., Inc. v. Amari (In re Amari*, --- B.R. ----, 2012

WL 5940287, at *14 (Bankr. N.D. Ill. 2012); *Raymond Prof'l Grp., Inc. v. William A. Pope Co.

(In re Raymond Prof'l Grp., Inc.*, 408 B.R. 711, 742 (Bankr. N.D. Ill. 2009); *Peterson v. Berg (In

re Berg)*, 387 B.R. 524, 554 (Bankr. N.D. Ill. 2008); *Paloian v. Serla S.A. de C.V. (In re GGSI

Liquidation Inc.)*, 351 B.R. 529, 593 (Bankr. N.D. Ill. 2006).

In this case, all of Peregrine's 24,000 customers, including its 7,000 other forex

customers, potentially have similar claims for fraud and/or breach of fiduciary duty to the extent

they are not paid in full in Peregrine's bankruptcy case. The plaintiffs are not entitled to more

than their ratable share of estate assets for these claims. The plaintiffs' claim in Count III seeking

imposition of a constructive trust will be dismissed.

25

## VI.    Count IV - Declaratory Judgment Recognizing Statutory Priority Under Subchapter IV of the Bankruptcy Code

In Count IV of the Complaint, the plaintiffs allege that the forex contracts they traded through Peregrine are "commodity contracts" as that term is defined in § 761(4) of the Bankruptcy Code, 11 U.S.C. § 761(4). Section 761(4) defines "commodities contracts" in ten subsections. Subsections (A) through (E) describe contracts traded on various markets. Subsection (F) is a "catch-all" provision that states:

> (F) (i) any other contract, option, agreement, or transaction that is similar to a contract, option, agreement, or transaction referred to in this paragraph.

11 U.S.C. § 761(4)(F). Plaintiffs argue that the contracts they traded are similar to the other types of contracts listed in § 761(4) so they fall within this catch-all provision in subsection (F). They therefore seek the same treatment that the trustee is giving to customers who traded contracts that fall squarely within the definitions in subsections (A) through (E).

The trustee seeks dismissal of Count IV but said nothing specific about Count IV in his motion to dismiss. In his memorandum in support of the motion, the trustee states only in the introduction that the Forex Disclosure and the Agreement defeat their claims in all four counts. The trustee failed to make any argument that could even potentially justify dismissal of this claim until his reply brief. Even the reply does not address why forex contracts do not fall within the catch-all provision of § 761(4)(F). Matters raised for the first time on reply are waived and will not be considered as a basis for granting a motion to dismiss. *See Gonzales v. Mize*, 565 F.3d 373, 382 (7th Cir. 2009); *U.S. v. Tockes*, 530 F.3d 628, 633 (7th Cir. 2008) ("Unsupported and undeveloped arguments . . . are considered waived."); *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997) (citing *Black v. TIC Inv. Corp.*, 900 F.2d 112, 116 (7th Cir. 1990)); *Fogel v.*

26

*Linnemann (In re Mission Bay Ski & Bike, Inc.)*, No. 08 A 55, 2009 WL 2913438, at *8 (Bankr.

N.D. Ill. Sept. 9, 2009).  The motion to dismiss Count IV will be denied.


### VII.    Conclusion

For all of these reasons, the trustee's motion to dismiss will be granted with respect to

Count III and will be denied with respect to Counts I, II and IV.


Dated:  February 1, 2013                                     ENTERED:

                                                            _____
                                                            Carol A. Doyle
                                                            United States Bankruptcy Judge